**Gary M. Berne,** OSB No. 77407
Email:  gberne@ssbls.com
**Robert A. Shlachter,** OSB No. 91171
Email:  rshlachter@ssbls.com
**Timothy S. DeJong,** OSB No. 94066
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 Southwest Oak Street, Suite 500
Portland, Oregon 97204
Telephone (503) 227-1600
Facsimile (503) 227-6840

**David V. Carlson** *(Admitted Pro Hac Vice)*
Email: DaveC@SeedIP.com
**William O. Ferron, Jr.** *(Admitted Pro Hac Vice)*
Email: billf@SeedIP.com
**Kevin S. Costanza** *(Admitted Pro Hac Vice)*
Email: KevinCo@SeedIP.com
**SEED IP LAW GROUP PLLC**
701 Fifth Avenue, Suite 6300
Seattle, WA 98104-7092
Telephone (206) 622-4900
Facsimile (206) 682-6031

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| **KAI U.S.A., LTD., dba KERSHAW KNIVES**, an Oregon Corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>**BUCK KNIVES, INC.**, a California Corporation<br><br>                Defendant. | Case No: CV05-0446 HA<br><br>**PLAINTIFF AND COUNTERDEFENDANT KAI U.S.A. LTD., dba KERSHAW KNIVES' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF DEFENDANT BUCK CLAIM CONSTRUCTION**<br><br>**Oral Argument Requested** |

Plaintiff Kershaw seeks to strike the Declaration of Prof. David Dornfeld submitted by Defendant Buck Knives Inc. ("Buck") in Support of Defendant Buck Knives Inc.'s Claim Construction for U.S. Patent No. 6, 594,906 ("the '906 patent"), entitled "Knife with Integral Gated Attachment."

Prof. Dornfeld's declaration purports to opine on the meaning of the '906 patent claims, claim construction and the understanding of one of skill in the art. Prof. Dornfeld's declaration, however, recites no experience, background or education that would qualify him as an expert in these areas. Prof. Dornfeld also recites no experience with knife design, knife manufacture, the knife industry, or knowledge of knives that could qualify him to opine on the view of one of ordinary skill in the art. Prof. Dornfeld also recites no qualifications in patent law or any specialized knowledge of patents that would qualify him to opine on patent law.

As discussed in detail below, Prof. Dornfeld's declaration contains many errors that demonstrate a lack of understanding of knife design and the terms commonly used by knife designers further indicating his inability to understand the art of knife design irrespective of his engineering credentials. Prof. Dornfeld's errors demonstrate that his testimony is unreliable and should be stricken despite his degree in engineering.

Because the declaration of Prof. Dornfeld does not meet the standards under Federal Rules of Evidence 701 and 702, Prof. Dornfeld's declaration should be stricken.

## I.   LEGAL STANDARD FOR RULE 702 ADMISSIBILITY

Federal Rule of Evidence 702 (Rule 702), which has been amended to codify the holding of *Daubert v. Merrel Dow Pharms.*, 509 U.S. 579 (1993), governs the admissibility of expert testimony. This gatekeeping function extends beyond scientific testimony to "testimony based on . . . technical and other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Courts must determine whether the

proposed witness is a qualified expert in the area in which he or she is being offered as and expert; (2) the proposed expert's testimony is reliable and (3) the expert's testimony will assist the trier of fact. *See Daubert*, 509 U.S. at 595. The proponent of the evidence, here Buck, must establish the expert's qualifications and the reliability and fit of the proposed testimony by a "preponderance of proof." *See Daubert*, 509 U.S. at 593 n. 10.

**II.     BECAUSE PROF. DORNFELD IS NOT QUALIFIED TO TESTIFY AS TO THE LEVEL OF SKILL IN THE ART AND UNDERSTANDING BY ONE OF SKILL IN THE ART, HIS OPINIONS SHOULD BE STRICKEN**

First, the court must determine whether each expert is qualified to testify. *See Calhoun v. Yamaha Motor Corp., U.S.A.,* 350 F.3d 316, 321 (3rd Cir. 2003). The ultimate issue for the court to determine is whether the witness has "specialized knowledge" through "experience, training or education" as to the contents of his proposed expert testimony. Fed. R. Evid. 702. If a witness is not qualified as an expert in the field that governs the topics covered in his testimony, that testimony cannot possibly meet the requirements mandated by Daubert. *See e.g., Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.,* 222 F. Supp. 2d 423, 497-98 & n. 37 (S.D.N.Y. 2002).

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience or education with the subject matter of the witness's testimony." *See Solaia Techn. LLC v. Arvin Meritor, Inc.*, 361 F. Supp. 2d 797, 812 (N.D. Ill. 2005). Paragraph 1 of Prof. Dornfeld's declaration states that he has been engaged by Buck Knives to provide his "opinion on how someone of ordinary skill in the art at the time of the invention described in [the '906 patent] would have understood the disclosed technology and the meaning of the patent's claims in light of the specification, prosecution file history and relevant extrinsic evidence." Neither Prof. Dornfeld's declaration nor his curriculum vitae, however,

provide a basis for his qualification to opine on ordinary skill in the art or his understanding of one of ordinary skill in the art.

Paragraphs 3-6 of Prof. Dornfeld's declaration list his credentials as a professor of manufacturing engineering at the University of California, Berkeley, his degrees in mechanical engineering and his associations with professional societies for mechanical engineers. *See* Dornfeld Decl. attached hereto as Exhibit A. The declaration nowhere recites *any* experience with or knowledge of knife design, knife designers, the knife industry or of knives. Also mentioned are five patents. None of these relates to knives or knife design or manufacture. *See* Curriculum Vitae attached hereto as Exhibit B. Prof. Dornfeld's curriculum vitae similarly is bereft of any qualifying experience or knowledge. There is, thus, nothing in Prof. Dornfeld's declaration or curriculum that would qualify him to opine on the art of knife design or manufacture or the understanding of one of skill in the art. His statements opining on the level of skill of one of ordinary skill in the art and those opining on the understanding of one of ordinary skill in the art, should, therefore, be stricken. *See e.g., Kerrigan v. Maxon Indus., Inc.,* 223 F. Supp. 2d 626, 635 (E.D. Penn. 2002) ("We agree with Defendant that Novicelli's understanding of the 'principles of mechanics involved in the use of the power take-off attached to the engine, and its connection with the hydraulic equipment' does not establish his ability to testify as to the design and implementation of the proposed hydraulic line safety device and is not sufficient to qualify him to offer an expert opinion in this area."); *United States v. Chang,* 207 F.3d 1169, 1173 (9th Cir. 2000) ("It was not an abuse of discretion for the district court to determine that Lausier's 'practical experience in international finance' did not amount to practical experience determining whether a particular security is counterfeit, the fact at issue in this case.").

      A.      Prof. Dornfeld's Opinion on the Level of Experience and Education of One of Ordinary Skill In The Art Must Be Stricken

In paragraph 9, Prof. Dornfeld opines that one of ordinary skill in the art would have had a degree in mechanical engineering and at least three years of experience involving the design and manufacturing of mechanical devices. Alternatively, he opines that one of skill in the art could have an equivalent level of skill based upon similar training in the design or manufacturing of *mechanical devices*. (emphasis added) As discussed above, Prof. Dornfeld recites no education or experience in knife design, manufacture or the industry. He recites no independent knowledge or experience with knives or knife design. He relies solely on his education and experience as a mechanical engineer. He states that his opinion is based on his experience and knowledge of the levels of education and experience of those working in the field of the '906 patent, the types of problems encountered, and the sophistication of the technology, but he recites no such experience or knowledge. Thus, there is no basis for his opinion — it is the kind of speculation that Rule 702 guards against.

One of skill in the art of knife design does not, in fact, require a degree or experience in mechanical engineering or in manufacturing mechanical devices. *See* Levine Decl., ¶ 5, attached hereto as Exhibit C to rebut that Prof. Dornfeld's alleged qualifications to opine on the level of skill in the art and the understanding of one of ordinary skill in the art of knife design or manufacture. Knife design is an art, and the majority of highly skilled knife designers do not have engineering training and are not mechanical engineers. Levine Decl., ¶ 5. In fact, the named inventor, Kimiyuki Sakai, does not have a degree in mechanical engineering or the equivalent. Because Prof. Dornfeld's opinion is without basis and is, in fact, contradicted by those who do have the basis and knowledge to opine on the level of skill in the art, it should be stricken. Levine Decl., ¶¶ 4-5 and Sakai Decl., ¶ 5, attached hereto as Exhibit D.

      B.      Prof. Dornfeld's Opinions Relying on His Purported Knowledge of One Of Ordinary Skill In The Art, Must Also Be Stricken

           1.      Prof. Dornfeld's Opinion as to One Of Skill In The Art Regarding "Spaced Apart and Parallel Implement Support Plates" Should Be Stricken

Paragraphs 13 and 15 purport to opine on the understanding of one of skill in the art regarding the claim limitation "spaced apart and parallel implement support plates." Specifically, in paragraph 13, Prof. Dornfeld "envisions" an embodiment that is nowhere disclosed in the patent documents, calls it an "alternate embodiment" and opines that "one of ordinary skill in the art would have envisioned similar embodiments having touching implement support plates that are still spaced apart and parallel." He continues: "I believe that one of ordinary skill in the art would understand this alternative embodiment to be within the scope of the claimed invention. It is my opinion that Kershaw's proposed construction is improper because it excludes this embodiment and similar embodiments that should be within the claimed invention's scope." The stated basis for these statements is Prof. Dornfeld's purported experience and knowledge of one of ordinary skill in the art. Similarly, in paragraph 15, Prof. Dornfeld's basis for his statement that a remark in the file history "simply established that the implement support plates are spaced apart for the purpose of providing room for the inner attachment plate," is that "[o]ne of ordinary skill, after reviewing the prosecution file history, would understand that the applicants never took the position that the implement support plates had to be entirely spaced apart such that they did not touch." Because Prof. Dornfeld is not qualified to opine as to the understanding of one of skill in the art, his statements of opinion purporting to do so are unfounded and speculative and should be stricken. *See* Sakai Decl., ¶¶ 5-8.

Page 5 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF DEFENDANT BUCK CLAIM CONSTRUCTION

2.  Prof. Dornfeld's Opinion as to One Of Skill In The Art Regarding "Attachment Plate Lying Between the Two Implement Support Plates" Should Be Stricken

Paragraphs 16 and 17 purport to opine on the understanding of one of skill in the art regarding the claim limitation "attachment plate lying between the two implement support plates" and should be stricken. Specifically, in paragraph 16, Prof. Dornfeld states that "one of ordinary skill would understand the term 'attachment plate' to simply mean a plate that provides support to a structure used for attaching the knife to different objects." In paragraph 17, he opines that Kershaw's claim construction is "inconsistent with how one of ordinary skill in the art would read the claim in light of the intrinsic evidence."

Again, Prof. Dornfeld has provided no basis for his alleged knowledge of "one of ordinary skill in the art," or even "the art" of knife design or manufacture. That Prof. Dornfeld does not in fact have any such knowledge or experience is made clear by his statement in paragraph 17 that "there is no mention of the term 'liner lock' in the intrinsic record, and one of ordinary skill would not conceive of adding such a limitation to the claim." The '906 patent, in fact, does show a conventional liner lock in Figure 9, which it describes using the term "side-lock plate." Sakai Decl., ¶¶ 12-13. The patent, in fact, refers to U.S. Patent No. 5,755,035 issued to Weatherly, which discusses side lock, or liner lock mechanisms. See '906 Patent, col. 6, lines 46-48, attached hereto as Exhibit E.

One of ordinary skill in the art would, unlike Prof. Dornfeld, have recognized the side-lock plate disclosed in the '906 Patent as a "liner lock," and, assuming that he actually read the '035 patent, would have known that it discussed liner locks as well. See Sakai Decl., ¶¶ 12-13. Prof. Dornfeld's statement shows that he does not have the knowledge of the art or the understanding of one of ordinary skill in the art. Sakai Decl., ¶¶ 12-13. Again, Prof. Dornfeld's otherwise conclusory statements of opinion purporting

Page 6 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF DEFENDANT BUCK CLAIM CONSTRUCTION

to use his alleged knowledge and understanding of one of ordinary skill in the art are unfounded and speculative and should be stricken.

        3.      Opinion as to One Of Skill In The Art Regarding "Attachment Structure Integral With the Knife Body" Should Be Stricken

Paragraphs 18 and 19 purport to opine on the understanding of one of skill in the art regarding the claim limitation "attachment structure integral with the knife body" and should be stricken. Specifically, in paragraph 18, Prof. Dornfeld opines that "one of ordinary skill would understand the term 'attachment structure' to mean a structure that has a shape that is well suited for attaching the knife body to objects," and that "[t]herefore, Buck's proposed construction: 'a structure integral with the knife body, the structure's shape being well suited for attaching the knife body to objects' is consistent with how one of ordinary skill would interpret the claim term." Prof. Dornfeld cites no rational for his first statement, aside from his conclusion that one of ordinary skill would so understand the term "attachment structure." Thus, he does not cite to any reference or well known custom for the meaning of "attachment structure" and bases his opinion on his purported understanding of "one of ordinary skill." Similarly, Prof. Dornfeld's second statement regarding the structures shape being consistent with the interpretation of one of ordinary skill, is also unfounded as he has no basis for opining on the understanding of one of ordinary skill in the art of knife design. In paragraph 19, Prof. Dornfeld purports to interpret the claim itself "as one of skill in the art" would. Again, his statement is unfounded and should be stricken.

        4.      Opinion as to One Of Skill In The Art Regarding "A Fixed Attachment Extending Laterally From the Attachment Plate" Should Be Stricken

Paragraphs 22 and 23 purport to opine on the understanding of one of skill in the art regarding the claim limitation "a fixed attachment extending laterally from the attachment plate" and should be stricken. In paragraph 22, Prof. Dornfeld bases his

Page 7 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF
DEFENDANT BUCK CLAIM CONSTRUCTION

entire understanding of the claim on his purported understanding of how one of ordinary skill in the art would understand this claim limitation.  These statements are conclusory and unfounded and should be stricken. Similarly, Prof. Dornfeld opines that Kershaw's construction contradicts how "one of ordinary skill in the art" would understand this limitation. He further opines that one of ordinary skill in the art would have understood "integral" to be distinct from "extending from."  Again, Prof. Dornfeld's statements are unfounded and should be stricken since he has no basis to opine on the understanding of one of ordinary skill in the art.

### III.     RELIABILITY

#### A.     Prof. Dornfeld's Opinion as to the Level of Skill of One Of Skill In The Art Is Not Reliable

The Federal Circuit has said that considerations for determining the level of skill include the educational level of the inventor; the type of problems encountered in the art; the prior art solutions to those problems; the rapidity with which innovations are made; the sophistication of the technology, and the educational level of the inventor. *See Helifix Ltd., v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1347 (Fed. Cir. 2000). As discussed above, while Prof. Dornfeld states that he has the levels of education and experience of those working in the field of the '906 patent, the types of problems encountered, and the sophistication of the technology, he recites no such experience or knowledge.  He cites no references on which he relies.  His statements are thus conclusory and without any foundation. These statements, thus, do not of themselves constitute consideration of these factors in his opinion.  Further, Prof. Dornfeld does not mention that the education of the inventor, Mr. Sakai, is not in fact a degree in mechanical engineering with three years experience, a factor to be considered. *Helifix*, 208 F.3d at 1347.   Prof. Dornfeld's opinion makes no effort to ascertain the level of ordinary skill in the art of knife design and manufacture

according to any of the relevant considerations listed by the Federal Circuit. Thus, it is conclusory, speculative and unreliable, and should be stricken on this basis as well.

B. Prof. Dornfeld's Errors Demonstrate That His Opinion Is Unreliable

Prof. Dornfeld's opinion contains errors that demonstrate that he does not understand the structure and operation of the knife of the Sakai '906 patent and that he either does not understand the statements in the prosecution history or has not considered them. Sakai Decl., ¶ 5, Levine Decl., ¶ 4. These errors demonstrate that his testimony is unreliable and should be stricken despite his degree in engineering.

1. Prof. Dornfeld's Statements That "Two Spaced Apart and Parallel Implement Support Plates" Would Include Support Plates That Touched Each Other Are Incorrect and Would Result in an Inoperable Knife

Prof. Dornfeld expressed the opinion in paragraphs 12 and 13 of his declaration that "two spaced-apart-and-parallel implement-support plates" would include embodiments where the support plates touched each other. This is not correct. Sakai Decl., ¶ 6, Levine Decl., ¶ 6. As can be seen in Figures 1-10 of the Sakai '906 patent, the plates 72, are spaced apart and parallel and do not touch. These are the implement support plates of claim 15 as limited by the file history.

Prof. Dornfeld's statement that one of ordinary skill in the art would have envisioned of embodiments having touching implement support plates that are still spaced apart and parallel is not correct. Sakai Decl., ¶ 7. He shows Figure 10 from the Sakai '906 patent at the top of the page and next to it he shows a new figure he created that is substantially changed from Figure 10 of the Sakai '906 patent. In this new figure he modifies Figure 10 of the Sakai '906 patent so that the plates 72 bend inward and touch at the top.

This figure is directly contrary to the description and claims of the Sakai '906 patent. The structure of Prof. Dornfeld's creation would be inoperable since the blade

Page 9 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF DEFENDANT BUCK CLAIM CONSTRUCTION

would not open and demonstrates he does not understand the invention. Sakai Decl., ¶¶ 7-9.

Aside from the impropriety of opining on a figure not in the patent, Prof. Dornfeld does not explain how this change would have been obvious to one of skill in the art given the Sakai '906 patent. The sides 72 would not bend in any embodiment of the invention. Since the plates touch in his modification, they would not be considered spaced apart, and since they bend towards each other to contact each other, they are not parallel, both of which are stated in Claim 15. His opinion thus ignores the basic rules of claim construction which requires giving meaning to all limitations.

Additionally, Prof. Dornfeld is not correct that one of ordinary skill would have understood such an embodiment from the patent documents. Sakai Decl., ¶ 7; Levine Decl., ¶¶ 10-14. In the invention described in the Sakai '906 Patent, the implement support plates do not contact each other at any location. According to the '906 patent, this was an intentional part of the design that permitted low cost manufacture of the components and ease of final assembly, as stated in the Sakai '906 Patent. See Sakai Patent, column 2, lines 21-36, column 5, line 64 to column 6, line 4, of '906 patent which states: "The present approach allows for the attachment structure and the cam follower spring arm 86 to be made with a single part, the attachment plate 78, reducing part counts and both manufacturing complexity and cost." See also Amendment of July 29, 2002 at 17 (excerpts attached hereto as Exhibit F).

In paragraph 15, Prof. Dornfeld contends that no explanation was given for adding "two spaced-apart-and-parallel implement-support plates" to claim 15. See Dornfeld Decl., ¶ 15. The remarks supporting the amendment of claim 15 distinguishing the Glesser Patent expressly discussed the use of implement support plates with an attachment plate lying between the implement support plates. The explanation for the amendment to claim 15 is set forth below:

Page 10 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF
DEFENDANT BUCK CLAIM CONSTRUCTION

> In this design, as shown in Figures 1-10 and discussed in the Specification, particularly at page 8, lines 3-4, the attachment plate lies between the implement-support plates that form the sides of the knife. The attachment structure extends from the attachment plate. This design gives excellent rigidity and stability to the knife, as well as ease of manufacturing. Glesser, on the other hand, teaches that the snap shackle 41 is integral with one of the sides of the knife, see Figure 5 of Glesser and the disclosure at col. 4, lines 39, et seq. Accordingly, Glesser cannot anticipate claim [15].

Amendment of July 29, 2002 at 8.

Glesser, which the patentee had to distinguish over, had sides of the knife touching and no attachment plate. The cited portion of the Specification of the '906 Patent, on page 8 at lines 3-4, thus supports the conclusion that one of skill in the art would view the amendment as intended to *exclude* embodiments where the sides of the knife touch each other. Levine Decl., ¶¶ 10-12. This is the very imagined embodiment that Prof. Dornfeld now for litigation seeks to introduce. Levine Decl., ¶¶ 12-13. Prof. Dornfeld's proffer of his imagined embodiment thus indicates a lack of understanding or of consideration of the statements of record and amendments in the prosecution history.

Prof. Dornfeld's conclusion is contrary to the language of the claims, the specification, the prosecution history and what a person of ordinary skill in the art would conclude from reading the Sakai '906 patent. Sakai Decl., ¶¶ 6-8, Levine Decl., ¶¶ 6-17. Because of the apparent lack of understanding or consideration of the statements of record in prosecution history, his opinion is unreliable and should be stricken.

> 2. Prof. Dornfeld's Opinion That the Implement Support Plates Are Part of the Attachment Structure Shows a Fundamental Lack of Understanding of the Patent and Drawings That Demonstrate the Unreliability of His Opinions

In paragraph 14, Prof. Dornfeld expresses the opinion that the implement support plates are not discrete members in the "embodiments" illustrated in Figures 9 and 10 because they are part of the attachment structure. This statement shows that Prof. Dornfeld does not understand the invention as illustrated in Figures 9 and 10. Sakai

Decl., ¶ 9. In order for the attachment structure to work, the implement support plates cannot form part of the attachment structure because there would be no open area 58 to use to attach the knife. As explained in the '906 patent, column 4, lines 2-8:

> The gate attachment 44 and/or the attachment arm end 52 are positioned laterally from the knife body 22, so that there is an attachment separation 56 therebetween. The attachment separation 56 ensures that the attachment structure 42 and the knife body 22 cooperatively define and encompass an open area 58.

Prof. Dornfeld suggests that the sides 72 of the knife extend out as part of the attachment structure in Figures 9 and 10. This is clearly incorrect since this would not leave a place to connect the gate 60, and would not leave it a place for the open area 50 that would permit the structure to be attached to objects. The whole purpose of the invention is thus defeated if the plates 72 are part of the attachment structure.

Prof. Dornfeld's statements are also inconsistent with the prosecution history record. As originally filed, the attachment structure was stated to be integral with the knife body in claim 15. This claim was rejected in light of Glesser '094, the Examiner stating that Glesser showed an attachment structure that was integral with the knife body, namely one of the sides of the knife. Because of the rejection, Claim 15 was amended to describe three parts of the knife body, two implement support plates and the attachment plate.

The reliability of Prof. Dornfeld's statements in paragraph 20 of his declaration is also at issue. Paragraph quotes part of the remarks of the patentee explaining why the language was added to claim 15. However, it stops his quote in the middle of the paragraph of the patentee's remarks; leaving off the distinction made by the patentee. The statements in the file expressly excluded from the scope of claim 15 any knife in which the attachment structure was part of the implement support plates, (sides) of the knife. Thus, if Prof. Dornfeld had included the entire quote, he could not state on

Page 12 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF
DEFENDANT BUCK CLAIM CONSTRUCTION

paragraph 15 that the outer plates 72 become part of the attachment structure, since the statements in the file history state this is not the case.

Prof. Dornfeld also incorrectly interprets the patent Figures. At the top of page 15 of his declaration, Prof. Dornfeld shows Fig. 10 and wrongly states that it is a side view of Fig. 9. The '906 patent states that Fig. 10 is only a schematic to show the layer construction of the plates. It does not depict the actual knife. It is therefore incorrect to state that Fig. 10 is a side view of Fig. 9. Fig. 10 does not show the blade of Fig. 9. Further Fig. 9 does not have the plates 72 that are shown in Fig. 10. *See* Levine Decl., ¶ 27, Sakai Decl., ¶ 11.

The statement by Prof. Dornfeld that the support plates form part of the attachment structure in one embodiment has no support in the '906 patent (he cites to no text), ignores the very text added to narrow the claim to be patentable over Glesser '094, and misreads the schematic in Figure 10. These errors are further evidence that Prof. Dornfeld's opinions are unreliable and should be stricken.

        3.      Prof. Dornfeld's Statements That no Liner Lock is Mentioned Are Incorrect

As discussed above, Prof. Dornfeld's statement in paragraph 17 that "there is no mention of the term 'liner lock' in the intrinsic record, and one of ordinary skill would not conceive of adding such a limitation to the claim," is also in error. Sakai Decl. ¶ 12-13. The '906 patent does show a conventional liner lock in Figure 9, but it uses the term "lock plate." Sakai Decl., ¶ 13. The patent, in fact, refers to U.S. Patent No. 5, 755, 035 issued to Weatherly, which calls this structure a liner lock. *See* '906 Patent, col. 6, lines 46-48 and '035 Patent, attached hereto as Exhibit G, at Abstract, line 1, claim 1, and other locations. The first line of the Abstract of the Weatherly Patent begins, "A liner lock knife with an improved liner lock mechanism . . . ." The second paragraph of the Weatherly patent states:

> For several years some folding knives have included a locking mechanism known as a liner lock, in which a long finger-like portion of a liner plate within the handle of such a knife is bent to extend at a slight angle toward the blade of the knife.

One of ordinary skill in the art would have known that a lock plate is a "liner lock." Sakai Decl., ¶ 13. Additionally, Prof. Dornfeld would have known that the '035 patent discussed liner locks if he had understood and/or considered this reference. This error demonstrates that Prof. Dornfeld's opinion as to the understanding of one of skill is unreliable and calls into question methodology as to consideration of this reference, also indicating the unreliability of his opinions. For these reasons as well his opinions should be stricken.

## IV. PROF. DORNFELD'S OPINIONS ON CONCLUSIONS OF PATENT LAW SHOULD BE STRICKEN UNDER RULE 701

Prof. Dornfeld's declaration and curriculum vitae contain no education or experience in patent law. Nevertheless, Prof. Dornfeld offers testimony in his declaration which opines on conclusions of patent law. Prof. Dornfeld's declaration is filled with statements that opine on the correct claim construction. Such statements appear in paragraphs 8 and 10-24. For example, Prof. Dornfeld states that it is his "opinion that most of Kershaw's claim constructions improperly narrow claim 15's coverage" in paragraph 10; that it is his opinion that "Kershaw's construction . . . is inappropriate and improper because it is too lengthy and restrictive" in paragraph 12; that it is his opinion "that Glesser does not teach or suggest the use of an attachment plate, and that is why the Examiner allowed claim 15 over Glesser" in paragraph 20; that it is his opinion that "the specification and prosecution history do not teach that the fixed attachment arms must be part of or integral with the attachment plate" in paragraph 21; and that it is his opinion

that "the fixed attachment does extend from the top of the knife body as claimed" in paragraph 24.[1]

The Federal Circuit has repeatedly held that witnesses with scientific backgrounds but no special experience in patent law are not qualified to opine on patent issues of patent law and are no more qualified to do so than lay witnesses. *See e.g.,Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."); *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1585 (Fed. Cir. 1996) ("opinion testimony on claim construction should be treated with the utmost caution, for it is no better than opinion testimony on the meaning of statutory terms."); *Markman v. Westview,* 52 F.3d 967, 983 (Fed. Cir. 1995) (en banc). Here Prof. Dornfeld is not qualified as a patent law expert and is not qualified as an expert to opine on the understanding of one of ordinary skill in the art. Thus, his statements are speculative and without foundation. This court should not allow his testimony on the meaning of the claim terms, claim construction or patent law principles any more than it would a lay witness with no qualifying experience.

This type of testimony is also exactly the type of testimony which is excluded under Fed. R. Evidence 701 ("Rule 701") that governs opinion testimony from lay witnesses. Rule 701 provides that lay witnesses may testify as to opinions that are within their personal experience and knowledge. The rule states in pertinent part:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions and inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'

---

[1] To avoid reproducing a substantial portion of Prof. Dornfeld's declaration, only a few examples are reproduced herein.

Page 15 – PLAINTIFF'S KAI U.S.A., LTD'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF DEFENDANT BUCK CLAIM CONSTRUCTION

testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Legal conclusions regarding claim construction are not within the personal knowledge or experience of Prof. Dornfeld. The Federal Circuit has decisively held that such testimony is entitled to no weight, as claim construction is an issue of law solely in the province of the court. *See Markman,* 52 F.3d at 983. As such, his testimony on such issues cannot be used to support Buck's claim construction arguments and should be stricken.

## V. CONCLUSION

For the foregoing reasons, the Declaration of Prof. Dornfeld should be stricken.

DATED this 21st day of November, 2005.

>Respectfully submitted,
>
>Seed Intellectual Property Law Group PLLC
>
>_____/s/_____
>David V. Carlson
>701 Fifth Avenue, Suite 6300
>Seattle, Washington 98104
>(206) 622-4900

CERTIFICATE OF SERVICE

I hereby certify that on November 21st, 2005, a copy of the foregoing PLAINTIFF AND COUNTERDEFENDANT KAI U.S.A. LTD., dba KERSHAW KNIVES' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DORNFELD DECLARATION FILED IN SUPPORT OF DEFENDANT BUCK CLAIM CONSTRUCTION was served on Defendants' counsel by electronic filing upon the following attorneys registered to receive service by email through the U.S. District Court, District of Oregon Electronic Case Filing System:

> Robert J. Artuz, Esq.
> rjartuz@townsend.com
> Theodore T. Herhold, Esq.
> ttherhold@townsend.com
> TOWNSEND AND TOWNSEND & CREW LLP
> 379 Lytton Avenue
> Palo Alto, CA  94301-1431
>
> Craig D. Bachman
> bachmanc@lanepowell.com
> Kenneth R. Davis, II
> davisk@lanepowell.com
> LANE POWELL PC
> 601 SW Second Avenue, Suite 2100
> Portland, OR  97204-3158

                                            /s/
                                      Ross Merritt