UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAI U.S.A., LTD., dba KERSHAW
KNIVES, an Oregon Corporation,                    Case No. CV 05-446-HA

                Plaintiff,          OPINION AND ORDER

      v.

BUCK KNIVES, INC., a California
Corporation,

                Defendant.
_____

BUCK KNIVES, INC.,

                Counterclaimant,

      v.

KAI U.S.A., LTD., dba KERSHAW
KNIVES,

                Counterdefendant.
_____

HAGGERTY, Chief Judge:

Kai U.S.A., Ltd., doing business as Kershaw Knives (Kershaw or plaintiff) filed a Complaint alleging patent infringement against Buck Knives, Inc. (Buck or defendant) on two patents owned by plaintiff. Defendant responded and filed a counterclaim against plaintiff, alleging infringement on one of its patents. Both parties seek a claim construction order from this court. In their briefings, the parties offer proposed definitions of the meaning and scope of the claim terms in the three patents at issue. This Order provides the court's construction of the claim terms.

## I.    BACKGROUND

Plaintiff holds U.S. Patent No. 6,338,431 ('431 patent) for a "Locking Knife Blade With Moving Locking Mechanism on Blade," and Patent No. 6,397,476 ('476 patent) for an "Opening and Closing Assisting Mechanism of a Folding Knife." Plaintiff asserts that defendant is infringing on claims one, two, six, eight, thirty-seven, thirty-eight, and forty-four of the '476 patent and claim twenty-seven of the '431 patent through its sale of numerous assisted opening knives.

Defendant is the holder of U.S. Patent No. 6,594,906 ('906 patent), entitled "Knife With Integral Gated Attachment." Defendant counterclaims that plaintiff is infringing on claim fifteen of the '906 patent.

## II.    PROCEDURAL MATTERS

The court conducted a hearing pursuant to the guidance provided in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (hereinafter "*Markman I*") and *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996) (hereinafter "*Markman II*") on

2 -- OPINION AND ORDER

December 13 and 14, 2005. The purpose of this hearing was to adduce evidence regarding the disputed terms for claim construction, and to determine the proper meanings for terms in dispute.

### III.    STANDARDS

A patent is a fully integrated document that must set out a written description of the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains" to practice the invention. 35 U.S.C. § 112. "It has long been understood that a patent must describe the exact scope of an invention and its manufacture to secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them." *Markman II,* 517 U.S. at 373 (internal quotations and citation omitted).

### 1. Patent infringement

A patent infringement analysis is a two-step process. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). First, the meaning and scope of patent claims allegedly infringed upon must be determined. *Id.* (citing *Markman II*, 517 U.S. at 371-73). This step is commonly referred to as "claim construction" or "claim interpretation." *Markman II,* 517 U.S. at 391 (the construction of scope and meaning of the patent is a question of law for the court to decide, although the ultimate question of infringement may remain for the jury). Second, the properly construed claims must be compared to the device or method that is allegedly infringing. *See Cybor Corp.*, 138 F.3d at 1454.

The interpretation and construction of a patent claim are "exclusively within the province of the court." *Markman II*, 517 U.S. at 372. A court "has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman I,* 52

F.3d at 979.  Accordingly, under *Markman I* and *II*, courts conduct a hearing to construe

disputed claims.  *See e.g. Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368,

1370 (Fed. Cir. 1998).

**2.  Standards for construction**

To determine the meaning of a patent claim, the district court considers the intrinsic

record, which consists of the claims, specification, and prosecution history, if in evidence.

*Markman I*, 52 F.3d at 979.  The court may also consider extrinsic evidence, such as expert

testimony, inventor testimony, and published articles.  *Dow Chem. Co. v. Sumitomo Chem. Co.,*

*Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001).  However, extrinsic evidence is considered only if

needed to assist the court in determining the meaning or scope of technical terms in the claims.

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) (ordinarily the court

should not rely on extrinsic evidence to ascertain the scope of the claimed invention because

the public is entitled to rely on the public record of a patentee's claim as contained in the

claims, specification, and prosecution history); *see also Markman I,* 52 F.3d at 980-81.

Therefore, if the public record unambiguously describes the scope of the patented invention,

reliance upon extrinsic evidence is improper.  *Vitronics*, 90 F.3d at 1583.  Furthermore,

extrinsic evidence may not be used to vary or contradict the terms of the claims.  *Id.* at 1584.

**a.  Ordinary and customary meaning of the claim language**

In examining the intrinsic record, "the analytical focus must begin and remain centered

on the language of the claims themselves, for it is that language that the patentee chose to use to

'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as

his [or her] invention.'"  *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1331

(Fed. Cir. 2001) (citing 35 U.S.C. § 112, ¶ 2).  The court must make an effort to discern the ordinary and customary meanings attributed to the words of the claims before consulting the written description and prosecution history, because to do otherwise "invites a violation of [the Federal Circuit's] precedent counseling against importing limitations into the claims." *Texas Digital Sys.*, *Inc. v. Telegenix, Inc.*, 308 F.3d 1192, 1204 (Fed. Cir. 2002).

There is a "heavy presumption" that the terms used in the claims have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art. *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citations omitted). Moreover, unless compelled to do otherwise, the court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art. *Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1342 (Fed. Cir. 2001) (citations omitted).

The court may use dictionaries, encyclopedias and treatises to determine meanings that would have been attributed by those of skill in the relevant art to any disputed terms used by the inventor in the claims. *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002); *Vitronics*, 90 F.3d at 1584 n.6.  Judges may consult these materials at any stage of litigation, regardless of whether they have been offered by a party in evidence. *Texas Digital,* 308 F.3d at 1203 (stating that it is "misplaced" to categorize such materials as "extrinsic evidence" or even a "special form of extrinsic evidence").

Because words often have multiple dictionary definitions, the intrinsic record must be consulted to identify which of the different dictionary meanings is most consistent with the inventor's meaning. *Id.* (citing *Dow Chem.,* 257 F.3d at 1372-73; *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1478 (Fed. Cir. 1998)).  If more than one dictionary definition is

consistent with the use of the word in the intrinsic record, the claim term may be construed to encompass all such consistent meanings. *Texas Digital*, 308 F.3d at 1203; *see also Rexnord*, 274 F.3d at 1343-44 (holding that the claim term "portion" may be interpreted in accordance with the dictionary definitions to encompass both "separate" and "integral" parts of an object).

### b. *Specification and prosecution history*

Next, the court must determine whether the claim language is clear on its face. If not, the court's consideration of the rest of the intrinsic record is directed to resolving the lack of clarity. *Interactive Gift*, 256 F.3d at 1331; *see also CCS Fitness*, 288 F.3d at 1367 (a claim term will not have its ordinary meaning if the term "chosen by the patentee so deprive[s] the claim of clarity" as to require the court to resort to the other intrinsic evidence for a definite meaning) (citations omitted).

If the claim language is clear on its face, the court uses the remaining intrinsic evidence to determine whether the presumption of the ordinary meaning has been rebutted, thereby requiring a deviation from the clear language of the claims. *Interactive Gift*, 256 F.3d at 1331.

A claim term is attributed a special meaning if the patentee acted as his or her own lexicographer by clearly setting forth a definition of the disputed claim term in either the specification or prosecution history. *CCS Fitness,* 288 F.3d at 1366; s*ee also Johnson Worldwide Associates, Inc. v. Zebco Corp.,* 175 F.3d 985, 990 (Fed. Cir. 1999). Nor will a claim term carry its ordinary meaning if the intrinsic record shows that the patentee (1) distinguished that term from prior art on the basis of a particular embodiment, (2) expressly disclaimed subject matter, or (3) described a particular embodiment as important to the invention. *CCS Fitness*, 288 F.3d at 1366-67.

A statement in the specification or prosecution history narrows a claim when the patentee makes the intention clear with unambiguous, specific statements. *Johnson Worldwide*, 175 F.3d at 989-90 (citation omitted).  Moreover, courts generally may not construe claims as limited to preferred embodiments or illustrative examples of an invention, because that would give the words a more confined meaning than would have been understood by persons of skill in the art. *Texas Digital*, 308 F.3d at 1205; *see also Teleflex,* 299 F.3d at 1328.  Furthermore, a proper claim construction "rarely, if ever" excludes a preferred embodiment discussed in the specification. *Dow Chem.,* 257 F.3d at 1378 (citation omitted).

## IV.    CONSTRUCTION OF RELEVANT TERMS

Plaintiff alleges infringement of claims one, two, six, eight, thirty-seven, thirty-eight, and forty-four for the '476 patent and claim twenty-seven for the '431 patent.  Defendant alleges infringement of claim fifteen for the '906 patent.  The disputed terms requiring construction, the proposed construction offered by the parties, and a discussion of the proper construction of those terms are set out below.

'476 patent

**Claim 1:**

1.    **"a spring operatively connected between the handle and the blade to assist in the opening of the blade"**

Plaintiff proposes the construction of

the spring, handle, and blade are arranged such that the spring operates to assist in opening the blade.  An outside motive force, such as from a user's hand, must manually move the blade some initial distance toward the open position, after which the spring assists to complete the movement of the blade to the open position.

Defendant proposes the construction of "a spring connected between the handle and the blade which, in operation, imparts a rotational force onto the blade as it moves from a closed position to an open position."

The court finds this phrase is clear on its face, except for the term "operatively connected." This term is addressed below.

### A.    "operatively connected"

The term "operatively connected" has a meaning that is broader than the term "connected." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems*, 381 F.3d 1111, 1118 (2004). To be "operatively connected" requires "some tenacious means of physical engagement that results in a unitary structure." *Id.* It is a general descriptive term used in patents, and means the claimed components must be connected in a way to perform a designated function." *Id.* Items are operatively connected when they are "arranged in a manner capable of performing the function." *Id.* at 1120.

Defendant argues that for the spring and blade to be "operatively connected" the spring must be physically connected to the blade. Defendant relies on *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005). *Cross Medical* construed the term "operatively joined" and held that it meant "connected and in contact such that the device is effective to perform [its function]." *Id.* at 1306. Defendant asserts this construction requires the items be "in contact" to be operatively connected.

The *Cross Medical* court construed "joined" as requiring contact, and distinguished "joined" from the term "connected," reasoning that it "would be improper to construe 'joined' more broadly to mean 'connected' without requiring contact." *Id.*

The phrase at issue here, however, is "operatively connected," not "operatively joined." As noted by the *Cross Medical* court, the term "connected" is broader than "joined." *Id.* As used in the '476 patent, the term "operatively connected" does not require the spring and the blade be in contact. The spring and blade need only be arranged so that they perform the designated function of assisting in opening the blade.

Defendant also argues that the term "rotational force" must be included in the construction. The prosecution history includes a statement by the patentee, in differentiating a prior art, that the spring of the prior art did not "impart any rotational force onto the blade of the knife as the knife moves from a closed position to an open position, and therefore, cannot 'assist in the opening of the blade' as required by [this patent]." *See* Def's Ex. E at 6. However, the term "rotational force" never appears in the '476 patent itself. The context in which the phrase appears in the prosecution history fails to establish that "rotational force" must be construed as part of this patent.

Defendant seeks to insert the limitation of "rotational force" into a broader claim. To disavow claim scope, the prosecution history must show a "clear and unambiguous disclaimer." *Middleton, Inc. v. Minn. Min'g & Mfg. Co.,* 311 F.3d 1384, 1389 (Fed. Cir. 2002). The written description of the patent does not limit the force to "rotational force." The single statement made in the prosecution history in reference to a prior art does not clearly and unambiguously surrender the subject matter. The court concludes that there are insufficient grounds presented for rending "rotational force" into the '476 patent.

Accordingly, the court accepts the first sentence of plaintiff's proposed construction of this term; "the spring, handle, and blade are arranged such that the spring operates to assist in

opening the blade."

**2.    "wherein the spring operates on the blade through a cavity formed in the handle"**

The construction proposed by plaintiff is "the spring is positioned within a recess or cavity in the handle, and force from the spring is transmitted from this cavity to the blade." The construction proposed by defendant is "wherein the spring imparts the rotational force onto the blade through a cavity formed in handle."

The court finds this term is clear on its face and does not require construction. As discussed in the prior construction, the argument that "rotational force" is required is unpersuasive.

**3.    "the cavity extending parallel to and spaced outwardly from the plane of travel of the blade"**

Plaintiff argues this should be construed as

the recess or cavity in the handle has a dimension that extends parallel to the plane of travel of the blade. The plane of travel of the blade is the recited reference plane. Thus, the relative dimensions of the blade or handle and the cavity are not constrained by this claim.

Defendant argues this portion of the claim should be construed as "the cavity extending parallel to the length of the handle and spaced outwardly from the plane of travel of the blade."

The court finds this term is clear on its face, requiring no construction. The argument that the cavity must be parallel to the length of the handle is unpersuasive.

/ / /

/ / /

/ / /

10 -- OPINION AND ORDER

**Claim 2:**

      1.    **"wherein the lining has an arcuate opening through which the spring operates on the blade"**

Plaintiff proposes the construction of "an arcuate aperture in the lining through which force from the spring is transmitted to the blade to assist in opening the blade."

Defendant proposes the construction of "wherein the lining has an arc-shaped opening through which the spring imparts the rotational force onto the blade."

The court finds this to be clear on its face, except for the word "arcuate." The court's construction of this term is "wherein the lining has a curved opening through which the spring operates on the blade."

**Claim 6:**

      1.    **"wherein the spring is a substantially planar bent wire spring"**

Plaintiff proposes the construction of "a spring having one or more bends in the same plane, thereby providing a substantially planar bent wire spring. It is not required that the spring be formed of a flat wire, but rather, that the shape of the spring be substantially flat or planar."

Defendant proposes the construction of "wherein the spring is a substantially flat bent wire spring."

The language of the term establishes that "bent wire" modifies "spring," indicating that the spring is composed of wire that is bent. The specification also supports this interpretation, stating that the spring or bias element may include a simple bend of 90 or 120 degrees, or a coiled bend of 360 degrees or greater. '476 Patent, Col. 4, lines 5-13. There is no limitation in the patent that the wire itself be flat. The specification notes that the preferred element is music

11 -- OPINION AND ORDER

wire, which is a round wire.  '476 Patent, Col. 4, lines 14-15.

The court concludes that the proper construction is "a spring having one or more bends in the same plane, thereby providing a substantially flat shape. The spring may be composed wire that is not flat."

**Claim 8:**

    1.    **"wherein there is a push rod extending through the cavity and connecting the blade to the spring"**

Plaintiff's proposed construction is

> a rod that has a portion of its length in the cavity and another portion outside the cavity so as to transmit the force of the spring to the blade.  The spring does not itself need to connect to the blade.  Rather, it is the push rod, which is positioned between the spring and the blade, that serves to provide the connection of the spring to the blade.

Defendant's proposed construction is "wherein there is a thin straight bar, which is pushed back and forth along its long axis, extending through the cavity and connecting the blade to the spring."

Defendant argues that the push rod is always integral with the spring, so if the push rod is connected to the blade, the spring is also connected.  Defendant's argument ignores the specific language of this claim, which sets out that the push rod connects the spring to the blade.  If the spring and push rod were always one unit, then the description of the push rod as "connecting the spring to the blade" would be meaningless.

The specification is the "single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.  Here, the specification indicates that the push rod and spring may be, but are not required to be, integral:

12 -- OPINION AND ORDER

> The bias element can be a material such as spring, wire or
> equivalent thereof as shown in each of FIGS. 2-6 and 8-10.
> Furthermore, the bias element or spring *may* include an integral
> pushrod as shown in FIGS. 3-6, 9 and 10.  As seen spring, wire or
> equivalent thereof and *may* include an integral pushrod, as seen in
> FIG. 3 [sic].

'476 Patent, Col. 3, lines 66 – Col. 4, line 4 (emphasis added).

Moreover, claim forty-four establishes the more narrow embodiment defendant argues is established in this claim.  In claim forty-four the bias element includes a push rod and spring that are one integral unit.  If this claim established that the spring and push rod were one integral unit, claim forty-four would be superfluous.

Defendant's construction also includes the requirement that the movement of the push rod must be back and forth along its long axis.  However, the specification of the patent teaches both axial and perpendicular movement for its push rods, without specifying or requiring a particular directional force.

The court concludes that the proper construction is "A push rod that has a portion of its length in the cavity and another portion outside the cavity so as to transmit the force of the spring to the blade.  The push rod connects the spring to the blade."

**Claim 37:**

1.    **"a bias element connected between the handle and the blade to assist in the opening of the blade"**

Plaintiff proposes a construction of

> a force-providing element that is connected to both the handle
> and the blade that assists in opening the blade.  An outside motive
> force, such as from a user's hand, must manually move the blade
> some initial distance toward the open position, after which the
> bias element assists to complete the movement of the blade to the
> open position.  The bias element may include any of: a spring, an

integral push rod, a combination that operates under similar
principles, to provide force between the blade and the handle to
assist in opening the blade.

Defendant proposes a construction of "a bias element connected between the handle and

the blade to impart a rotational force onto the blade as it moves from a closed position to an

open position."

This is the same as the first disputed term from claim one, except "spring" is replaced

with "bias element" and "operatively connected" is replaced with "connected." The court found

the language in claim one was clear except for "operatively connected." Here, "operatively

connected" is omitted. The term is clear on its face.

> **2.** **"wherein the bias element operates on the blade through a cavity formed in
> the handle, the cavity extending parallel to and spaced outwardly from the
> plane of travel of the blade"**

Plaintiff proposes "at least a portion of the bias element is positioned within a recess or

cavity in the handle. A second portion transmits force from the first portion to the blade, which

is outside the cavity."

Defendant proposes "wherein the bias element imparts the rotational force onto the

blade through a cavity formed in handle."

This phrase is the same as the second and third disputed terms from claim one, except

"bias element" has replaced "spring." The court finds it is clear on its face.

**Claim 38:**

> **1.** **"wherein the lining has an arcuate opening through which the bias element
> operates on the blade"**

Plaintiff proposes the construction of "an arcuate opening in the lining through which

force from the bias element is transmitted to the blade to assist in opening the blade."

14 -- OPINION AND ORDER

Defendant proposes the construction of "wherein the lining has an arc-sharped opening through which the bias element imparts the rotational force onto the blade."

This is the same as the first disputed term from claim two, except "bias element" replaces "spring."  The construction of the court is "wherein the lining has a curved opening through which the bias element operates on the blade."

**Claim 44:**

1.    **"wherein the bias element includes a spring and a push rod extending through the cavity and connecting the blade to the spring"**

Plaintiff proposes

> the rod has a portion of its length in the cavity and another portion outside the cavity so as to transmit the force of the spring to the blade.  The spring itself does not need to contact the blade.  Rather it is the push rod, which is positioned between the spring and blade that serves to provide the connection of the spring to the blade.

Defendant proposes "wherein the bias element includes a spring and a thin straight bar, which is pushed back and forth along its long axis, extending through the cavity and connecting the blade to the spring."

This is similar to the first disputed term from claim eight, except instead of allowing for a possible separate spring and push rod, this claim teaches that the bias element is one unit, which is comprised of a spring and push rod, and the push rod portion of this unit connects the blade to the spring.  The patent does not indicate any limitations to the axial force.

The court's construction is "wherein the bias element includes a spring and a push rod that has a portion of its length in the cavity and another portion outside the cavity so as to transmit the force of the spring to the blade.  The push rod portion connects the blade portion to

15 -- OPINION AND ORDER

the spring."

<u>'431 patent</u>

**Claim 27:**

1.   **"an oversized tang portion of the blade that is sized to extend through the opening in the handle when the blade is stored in the handle so that the oversized tang portion is exposed for manipulation from the back of the handle"**

Plaintiff proposes

> the oversized tang portion has a size such that, when the blade is closed, the oversized tang portion extends only out of the back of the handle opposite the side of the blade receiving opening. This permits a user's finger to press on the oversized tang portion to move the blade from the closed position. The oversized tang portion does not extend out of the pivot end of the handle opposite the blade tip end when the blade is in the closed position.

Defendant contends that the term is clear on its face.

The court finds that the term is clear on its face and does not require construction.

2.   **"a spring operatively connected between the blade and the handle to force the blade to pivot toward an open position when the oversized tang portion of the blade is pushed into the handle until the blade reaches an equilibrium point"**

Plaintiff proposes the construction of

> the spring, handle, and blade are arranged such that the spring operates to assist in opening the blade. The spring operates to force the blade toward an open position when the oversized tang portion of the blade is pushed sufficiently far into the handle. Some of the oversized tang portion of the blade must enter the handle before the spring operates to provide an opening force. It is the blade, not the spring, which passes an equilibrium point to cause the spring to assist in opening the blade.

Defendant proposes the construction of

16 -- OPINION AND ORDER

> a spring connected between the blade and the handle which, in
> operation, imparts a rotational force onto the blade to rotate it to
> an open position when the oversized tang portion of the blade is
> pushed into the handle until the blade reaches a point at which the
> forces acting on the blade are balanced.

Defendant proposes the inclusion of "rotational force" into this claim construction, as it did in the construction of a similar term in claim one of the '476 patent. In this patent, there is no statement in the prosecution history containing the term "rotational force." Additionally, the term is not included anywhere in the patent. Accordingly, the court finds the inclusion of "rotational force" in this term to be improper.

Defendant proposes to construct "equilibrium point" as "a point at which the forces acting on the blade are balanced." The court finds "equilibrium point" to be clear on its face.

As discussed in the construction of the '476 patent, the term "operatively connected" means arranged such that it can perform its designated function. The court's construction of this term is: "The spring, handle, and blade are arranged such that the spring operates to force the blade to an open position. The spring is activated when the oversized tang portion of the blade is pushed until the blade reaches an equilibrium point."

'906 patent

**Claim 15:**

   **1.    "two spaced-apart-and-parallel implement-support plates"**

Plaintiff proposes a construction of

> two sides of the knife body that are parallel to each other and held
> spaced-apart from each other by a member, such as a post, and
> the attachment plate. Since they are parallel, they are spaced
> apart for their entire length so that they do not touch each other.
> Each support plate is a discrete member, and not just a portion of
> another member.

17 -- OPINION AND ORDER

Defendant proposes a construction of "two implement support plates that are spaced apart and parallel.

Defendant argues that under this patent it would be possible for the support plates to touch one another at some point.  However, the language "spaced apart" and "parallel" indicate that the support plates cannot touch each other.  The specification also establishes that the support plates do not touch:

> In the preferred approach, there are two implement-support plates 72 that serve as the sides (also sometimes termed "bolsters") of the knife body 22.  In this preferred approach, the two implement-support plates 72 are parallel and spaced apart by support posts in the form of rivets.  In an alternative embodiment, there are separate side plates and the implement-support plate 72 is positioned between them, but that design adds unnecessary bulk and weight to the knife body.

'906 patent, Col. 5, lines 2-10.

As set out in the specification, when there are two implement support plates, they are separated by support posts, and when there are two side plates they are separated by the implement support plate.  The two plates do not touch or intersect.

Defendant's expert offered an alternative embodiment in which the two side plates are separated for the length of the implement support plate and then bend at one end and touch one another.  This embodiment is not supported by the language of the patent, as the plates are not spaced apart and parallel if they touch at one end.

The court concludes the proper construction of this term is "two implement support plates that are spaced apart and parallel and do not touch or intersect."

**2.    "an attachment plate lying between the two implement-support plates"**

Plaintiff proposes a construction of

a plate separate from, and positioned between the implement-support plates that form the sides of the knife. The attachment plate is between the support plates and keeps them spaced apart. The attachment plate is a separate member from a liner lock, a liner lock being a different element. If both an attachment plate and a liner lock are found in the same knife, they are separate components positioned laterally adjacent to each other.

Defendant proposes a construction of "a plate that supports an attachment structure, the plate lying between the two implement-support plates."

The court finds that this language is clear on its face and requires no construction.

**3.    "an attachment structure integral with the knife body"**

Plaintiff proposes

the attachment structure lies in the implement plane and comprises a gate attachment, an attachment arm, and a gate. The gate attachment and attachment arm are part of the attachment plate. The attachment structure is integral with the knife body in the sense that it is fixed and immovable relative to the knife body. The attachment plate cannot be integral with either of the sides of the knife, in the sense that they cannot be part of the same piece of material.

Defendant proposes "a structure integral with the knife body, the structure's shape being well suited for attaching the knife body to objects."

The court finds this language to be clear on its face and that no claim construction is needed.

/ / /


**4.    "a fixed attachment extending laterally from the attachment plate at the top of the knife body in the implement plane"**

Plaintiff proposes

19 -- OPINION AND ORDER

the fixed attachment is a part of the attachment structure, which in turn is part of the attachment plate and extends rigidly therefrom. The fixed attachment includes first and second portions between which the pivotable gate extends. The fixed attachment does not extend from the top of the knife body or from either of the sides of the knife, but is a part of, and extends from, the attachment plate at the top of the knife body.

Defendant proposes "a fixed structure used for attachment extending out laterally from the attachment plate at the top of the knife body in the implement plane."

The court finds this language to be clear on its face. Accordingly, no claim construction is necessary.

## V.    CONCLUSION

For the reasons expressed, U.S. Patent Nos. 6,338,431, 6,397,476, and 6,594,906 are construed in the manner set forth above

IT IS SO ORDERED.

Dated this ___9___ day of February, 2006

                         __/s/Ancer L.Haggerty_____
                              ANCER L. HAGGERTY
                              United States District Judge

20 -- OPINION AND ORDER